**IT IS ORDERED as set forth below:**

**Date: December 13, 2023**

_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 23-54816-JWC |
| JOHN FITZGERALD CARTER, | CHAPTER 11 |
| Debtor. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The question before the Court is whether a corporation in a pending chapter 7 bankruptcy case was still an "affiliate" of its owner when the owner filed his own chapter 11 bankruptcy case. The issue is important for debtors like John Carter, who seeks relief under subchapter V of chapter 11 of the Bankruptcy Code ("Subchapter V").[1] When Carter filed this case, he was the majority-owner of two companies that

---

[1] All references or citations to a statute are to the "Bankruptcy Code," 11 U.S.C. § 101 *et seq.*, unless otherwise specified. All references or citations to a Bankruptcy Rule are to the Federal Rules of Bankruptcy Procedure.

1

have been in chapter 7 bankruptcy cases for years. If he was still an affiliate of these two companies when he filed his case, and if the combined debts of Carter and the companies exceed $7,500,000, Carter is not eligible to be a debtor under Subchapter V. This issue could affect other business owners who seek the protection of Subchapter V days, weeks, months, or years after their companies become debtors in chapter 7 bankruptcy cases. Should Subchapter V be closed to individuals, potentially for years, while a chapter 7 trustee administers the estate of a previous failed business? The Court is mindful of the potential consequences of excluding such principals from the class of debtors who otherwise would be entitled to proceed under Subchapter V, but the plain language and structure of the Bankruptcy Code compel the Court to conclude that Carter and his businesses were still "affiliates" for purposes of eligibility to proceed under Subchapter V when he commenced this case. To hold otherwise would require the Court to ignore not only the plain language of Subchapter V's eligibility provision, but also numerous other provisions of the Bankruptcy Code and related statutes implicated by Carter's affiliate arguments. The Court further concludes that Carter failed to carry his burden of establishing that the combined debts of Carter and his affiliates in chapter 7 do not exceed $7,500,000, rendering him ineligible for relief under Subchapter V.

## I.    FINDINGS OF FACT

### A.    Carter's Bankruptcy Case

Carter filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, electing to proceed under Subchapter V on his petition. The U.S. Trustee timely

filed an objection to the election, Carter filed a response, and the Court held a hearing on the objection. The parties submitted supplemental briefing and a stipulation of facts following the hearing.

On his petition in response to the question, "[a]re any bankruptcy cases pending or being filed by. . . a business partner, or by an affiliate," Carter disclosed the bankruptcy cases of D&N Electric, A Carter Brothers Company ("D&N"), Case No. 16-72113, and Carter Brothers Security Services, LLC ("CBSS"), Case No. 18-61490. Carter identified his relationship with D&N and CBSS as "Affiliate." [Doc. No. 1]. Carter subsequently amended his voluntary petition to identify his relationship with both entities as "Non-statutory Affiliate." [Doc. No. 23].

In his Statement of Financial Affairs [Doc. No. 18], and again in his amended Statement of Financial Affairs [Doc. No. 24], Carter disclosed transfers to the chapter 7 estates of D&N and CBSS within two years prior to his petition date. Carter identified his relationship with D&N and CBSS as "Affiliates in Chapter 7."

D&N filed a voluntary petition under chapter 11 of the Bankruptcy Code in December of 2016. The Court appointed a chapter 11 trustee over D&N's estate in June of 2018 after it was discovered that D&N, under the control of Carter, attempted to sell estate assets without Court authority. The Court converted the D&N case to a chapter 7 case in August of 2018, and the chapter 11 trustee was appointed as the chapter 7 trustee. Carter owns 65% of the stock of D&N. The D&N case remains pending.

CBSS filed a voluntary petition under chapter 7 of the Bankruptcy Code in July of 2018. Carter owns 99% of the membership interests in CBSS and signed the petition as "Managing Member." The CBSS petition discloses D&N as an affiliate with a pending bankruptcy case and a relationship described as "affiliate – common ownership." The CBSS case remains pending.

## II.    CONCLUSIONS OF LAW[2]

Carter elected to proceed under Subchapter V on his petition as required by Bankruptcy Rule 1020(a), and the U.S. Trustee timely objected to his election pursuant to Bankruptcy Rule 1020(b). Bankruptcy Code § 1182 defines who may be a debtor under Subchapter V and excludes from eligibility "any member of a group of affiliated debtors under this title that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $7,500,000 (excluding debt owed to 1 or more affiliates or insiders)." 11 U.S.C. § 1182(1)(B)(i). The U.S. Trustee contends Carter is not eligible because he, D&N, and CBSS are a group of affiliated debtors with aggregate non-insider, noncontingent liquidated debts exceeding $7,500,000. Carter maintains that he is eligible, arguing that neither D&N nor CBSS were still his affiliates when he filed his case because those entities were controlled by chapter 7 trustees on his petition date. Carter also contends that even if they are affiliates, their aggregate debt does not exceed $7,500,000.

---

[2] The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## A.    <u>The Debtor Has the Burden of Proof to Establish Eligibility</u>

The Bankruptcy Code and Bankruptcy Rules do not address who carries the burden of proof on a debtor's Subchapter V eligibility when an objection is filed. *NetJets Aviation, Inc. v. RS Air, LLC (In re RS Air, LLC)*, 638 B.R. 403, 413 (B.A.P. 9th Cir. 2022). The U.S. Trustee argues the burden is on the debtor, citing numerous cases in support, and she is correct that a significant majority of courts conclude that debtors bear the burden of proof for Subchapter V eligibility by a preponderance of the evidence.[3] The rationale is that Subchapter V gives significant advantages to debtors compared to traditional chapter 11 reorganizations. *In re RS Air, LLC*, 638 B.R. at 414; *In re Evergreen Site Holdings, Inc.*, 652 B.R. 307, 316 (Bankr. S.D. Ohio 2023). Further, it "makes sense to place the burden on the debtor because debtors are in the best position to prove that they are qualified to be in subchapter V." *In re RS Air, LLC*, 638 B.R. at 414.

Carter cited no authority in his briefing in opposition to the majority position, but at the hearing his counsel noted a split in authority on the issue and cited *In re Serendipity Labs, Inc.*, 620 B.R. 679, 680 n.3 (Bankr. N.D. Ga. 2020) for the

---

[3] *E.g., In re RS Air, LLC*, 638 B.R. at 414; *In re Rickerson*, 636 B.R. 416, 422 (Bankr. W.D. Pa. 2021); *In re Family Friendly Contracting LLC*, No. 21-14213, 2021 WL 5540887, at *2 (Bankr. D. Md. Oct. 26, 2021); *In re Vertical Mac Constr.*, No. 6:21-01520, 2021 WL 3668037, at *2 (Bankr. M.D. Fla. July 23, 2021); *In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233, 235 (Bankr. S.D. Tex. 2021); *In re Blue*, 630 B.R. 179, 187 (Bankr. M.D.N.C. 2021); *In re Offer Space, LLC*, 629 B.R. 299, 304 (Bankr. D. Utah 2021); *In re Ikalowych*, 629 B.R. 261, 275 (Bankr. D. Colo. 2021); *In re Sullivan*, 626 B.R. 326, 330 (Bankr. D. Colo. 2021); *In re Johnson*, No. 19-42063, 2021 WL 825156, at *4 (Bankr. N.D. Tex. Mar. 1, 2021); *In re Thurmon*, 625 B.R. 417, 419 n.4 (Bank. W.D. Mo. 2020); *In re Blanchard*, No. 19-1244, 2020 WL 4032411, at *2 (Bankr. E.D. La. July 16, 2020); *In re Wright*, No. 20-01035, 2020 WL 2193240, at *2 (Bankr. D.S.C. Apr. 27, 2020).

proposition that the burden of proof is on the objecting party to establish ineligibility. In *Serendipity Labs*, Judge Sigler generally cited favorably to *In re Body Transit, Inc.*, 613 B.R. 400, 409 n.15 (Bankr. E.D. Pa. 2020), one of the few cases finding the objecting party has the burden. Judge Sigler noted, however, that case law at the time of *Serendipity Labs* was limited, and many of the cases cited for the majority position issued after *Serendipity Labs*. Further, it is questionable whether Judge Sigler ruled that the objecting party bears the burden because the objecting party in that case did not challenge the burden issue, and Judge Sigler stated only that "[t]he limited caselaw on this issue is generally consistent in placing the burden on the moving party. Even if the moving party has the burden of proof, [it] has carried that burden." *Serendipity Labs, Inc.*, 620 B.R. at 680 n.3 (citations omitted). Regardless, the clear trend since *Serendipity Labs* is to place the burden on the debtor, and the Court agrees with the majority position. The Court concludes Carter bears the burden of proof on eligibility under Subchapter V.

### B.    D&N and CBSS Are Affiliates of John Carter

The first question before the Court is whether Carter, D&N, and CBSS were "affiliated debtors under this title" on the petition date of this case. No one questions that Carter, D&N, and CBSS were "debtors under this title." The parties dispute only whether they were "affiliated" on the petition date.[4] Carter argues they were not affiliated because D&N and CBSS were controlled by chapter 7 trustees when he filed

---

[4] *See In re Dobson*, Case No. 23-60148, 2023 WL 3520546 (Bankr. W.D. Va. May 17, 2023) (holding that eligibility is determined as of petition date and subsequently-filed cases of affiliates do not impact eligibility); *In re Free Speech Systems, LLC*, 649 B.R. 729 (Bankr. S.D. Tex. 2023) (similar).

his petition. This precise issue appears to be one of first impression. Few cases have

analyzed debtor eligibility under § 1182(1)(B), and the decisions that have answered

different questions.[5]

> The term "affiliate" is defined in § 101(2), which provides, in relevant part:

>> The term "affiliate" means—. . .

>> corporation 20 percent or more of whose outstanding *voting
>> securities* are directly or indirectly owned, controlled, or held with
>> power to vote, by the debtor . . . .

11. U.S.C. § 101(2)(B) (emphasis added). The parties stipulate that Carter owns 65%

of the stock of D&N and 99% of the LLC membership interests of CBSS, but they

disagree as to whether such stock and membership interests are "voting securities."

The phrase "voting securities" is not defined by the Bankruptcy Code, but

"security" is defined in § 101(49). Stock clearly falls within the definition of "security"

under § 101(49)(ii), and LLC membership interests may also be considered a

"security."[6] Carter does not dispute that he owns securities.

Nor does he challenge that the securities he owns were "voting securities" prior

to the D&N and CBSS cases. Instead, he argues that the appointment of chapter 7

trustees over D&N and CBSS effectively nullified whatever voting rights he had, and

that his ownership rights in the two entities, whatever they were before the D&N and

---

[5] *See, e.g., In re Dobson, supra* n.4; *In re Free Speech Systems, LLC, supra* n.4; *In re Parking
Mgmt, Inc.*, 620 B.R. 544 (Bankr. D. Md. 2020) (deciding whether lease rejection claims count
toward debt limit); *Serendipity Labs*, 620 B.R. 679 (deciding whether non-debtor owner of
debtor was an affiliate).

[6] *See In re Phenomenon Mktg. & Entm't, LLC*, 2:22-BK-10132-ER, 2022 WL 1262001, at *3
(Bankr. C.D. Cal. Apr. 28, 2022), modified, 2:22-BK-10132-ER, 2022 WL 3042141 (Bankr.
C.D. Cal. Aug. 1, 2022) (citing *D.R. Mason Const. Co. v. GBOD, LLC,* 17-cv-01779, 2018 WL
1306425, at *5 (S.D. Cal. Mar. 13, 2018)).

CBSS cases, no longer meet the definition of "voting securities" as of the commencement of this case. Carter cites no authority directly in support of his position, and the argument appears to be quite novel. Its novelty, however, does not make it unworthy of serious consideration.

Carter first cites cases finding that the definition of "affiliate" is meant to be precise and restrictive. *See Palmdale Hills Prop. v. Argent Mgmt., LLC (In re Palmdale Hills Prop.)*, 2017 Bankr. LEXIS 3534, *28-29 (quoting *Wilson v. Huffman (Matter of Missionary Baptist Found.)*, 712 F.2d 206, 210 (5th Cir. 1983)). He then relies considerably on the definition of "voting securities" adopted by the Securities and Exchange Commission in the Code of Federal Regulations: "The term voting securities means securities the holders of which are presently entitled to vote for the election of directors." 17 C.F.R. § 230.405. Carter argues he is not presently entitled to vote for the election of directors because the chapter 7 trustees alone control D&N and CBSS and, if he has a technical right to vote for directors, "such a power is illusory." Carter's Supp. Brief, Doc. No. 38, p. 6. He cites *Commodity Futures Trading Com v. Weintraub*, 471 U.S. 343, 352-53 (1985), for the proposition that "when a trustee is appointed, he assumes control of the business, and the debtor's directors are 'completely ousted.'" He further cites the legislative history of § 101(2) for the proposition that "'affiliate' is 'intended to cover situations where there is an opportunity to control' a debtor." Carter's Supp. Brief, p. 6 (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 309 (1977)). Finally, he cites *In re Piece Goods Shops Co.*, 188 B.R. 778, 797 (Bankr. M.D.N.C. 1995) for the proposition that "[c]ourts have

effectuated this expressed legislative intent in holding, consistent with the SEC definition of 'voting securities,' that the extent of a security holder's voting power is the appropriate measure of determining whether one is an 'affiliate' of a debtor for 'insider' purposes." *Id.* In short, Carter argues that when a chapter 7 trustee takes over a corporate debtor's estate, the owners lose all meaningful voting power and control, effectively transforming an owner's "voting securities" into something other than "voting securities."

Carter's position avoids a seemingly harsh result to certain individuals seeking eligibility under Subchapter V, which was enacted to facilitate chapter 11 reorganizations for small businesses. *In re Parking Mgmt, Inc.*, 620 B.R. at 549. Further, his position avoids the unsatisfying result of excluding him from Subchapter V based on years-old chapter 7 cases while debtors like those in *Free Speech* and *Dobson* were allowed to proceed under Subchapter V even though they involved what some have argued is gaming the eligibility requirements by filing cases of eligible debtors as little as one day before filing affiliate cases that would otherwise render the first-filed debtor ineligible.[7] Whether or not the affiliated group of debtors that can exclude otherwise eligible debtors from Subchapter V *should* include long-defunct businesses in protracted chapter 7 bankruptcies over which the owners lost effective control years ago, Carter's proposed solution simply does not work.

---

[7] The Court has not previously ruled on the issue raised in *Free Speech* or *Dobson* and does not do so here. The Court points to those cases merely as an example of what some might consider an unsatisfying juxtaposition of the results in those cases and the result in this case.

First, Carter's argument is contrary to common bankruptcy usage and practice. Carter himself identified both D&N and CBSS as affiliates in his original petition and Statement of Financial Affairs. It was only after the 341 meeting in his case that he amended his petition to describe the relationship as "non-statutory affiliates," whatever that term means.[8] The CBSS petition also identified D&N as an affiliate despite the appointment of a chapter 11 trustee over D&N at the time CBSS filed its chapter 7 case. Neither Carter nor the Court's own research uncovered any cases even suggesting that an owner of 20% or more of a debtor's voting securities ceases to be an affiliate of a debtor in chapter 7 upon appointment of a trustee. The Court has, however, found one unpublished decision rejecting out of hand a similar argument in the context of a chapter 11 trustee. *See In re TS Employment, Inc.*, Case No. 15–10243, 2015 WL 9490348, *2 n.4 (Bankr. S.D.N.Y. Aug. 18, 2015).

Second, the plain language of § 1182(1)(B)(i) includes debtors under all of title 11, not just debtors in non-chapter 7 cases or non-trustee cases. *See In re Dobson*, 2023 WL 3520546 at *4 ("Congress in amending the statute made it abundantly clear that the term 'debtors' in section 1182(1)(B)(i) is not limited to a group of affiliated debtors which are all proceeding under subchapter V—it was made clear that the debt of any affiliate debtor under any chapter be counted in the calculation."). Carter's position is that no chapter 7 debtor, or any debtor with a trustee appointed,[9] should

---

[8] As Carter points out, the definition of "affiliate" is intended to be precise, restricted, and not subject to expansion beyond the statutory definition.

[9] The Court sees no functional difference between a chapter 7 trustee and chapter 11 trustee as it pertains to Carter's arguments. Indeed, the "completely ousted" language from

ever be considered when determining Subchapter V eligibility. If Congress had intended such a broad exclusion of all chapter 7 debtors, it would be odd to do it by using the broad umbrella of "title 11" on the face of § 1182, only to bury the real intention to exclude chapter 7 debtors, wholesale, through a novel interpretation of the term "affiliate." It is even more implausible to do it through the definition of "voting securities" promulgated by the SEC in the CFR, which, according to the Court's research, had been cited only once in any bankruptcy case in the context of the definition of "affiliate" prior to the enactment of Subchapter V. *See Piece Goods Shops,* 188 B.R. at 797. *Piece Goods Shops*, however, had nothing to do with chapter 7 debtors or whether holders of prepetition voting securities remain affiliates following the appointment of a trustee. It involved whether the holders of class B and preferred stock that did not have the contractual power to vote for the debtor's directors were insiders of a chapter 11 debtor for purposes of voting on a plan. *Id.*

The only other case cited by Carter or found by the Court that adopts the CFR definition of "voting securities" for purposes of § 101(2) is *Serendipity Labs*, 620 B.R. at 683, which came after the enactment of Subchapter V and in no way suggests that "voting securities" should be interpreted to mean chapter 7 debtors and their owners cease to be affiliates upon appointment of a trustee. If anything, the opposite is true, as Judge Sigler found actual ability to vote a voting security is not dispositive to the question of affiliation: "that the entity that owns a debtor's stock happens to lose or

---

*Commodity Futures* originates from language in the legislative history discussing chapter 11 trustees. *Commodity Futures*, 471 U.S. at 353 n.6.

surrender the power to vote the stock (while retaining ownership) should not change that entity's status as an affiliate." 620 B.R. at 685 (citing *In re Interlink Home Health Care, Inc.*, 283 B.R. at 438-39).

In short, nothing cited by Carter suggests that Congress intended to contradict the plain language of § 1182 by harnessing the definition of "affiliate" and "voting securities" and applying them in such a novel way.

Third, assuming the CFR definition of "voting securities" is appropriate, the Court is not convinced that Carter is not "presently entitled to vote for the election of directors." His ability to vote for the election of directors certainly has limited value following the appointment of a chapter 7 trustee, but Carter offers no authority suggesting Carter is not able to elect directors of a debtor in chapter 7, limited power though they may have.

Nor is the Court convinced that appointment of a chapter 7 trustee renders an owner's voting power nugatory. Notwithstanding dicta in *Commodity Futures* that a chapter 7 debtor's directors are "completely ousted,"[10] chapter 7 debtors have various obligations and retain various rights in a chapter 7 case, and someone must perform those obligations and exercise those rights on behalf of a corporate debtor.[11] Although

---

[10] *Commodity Futures* analyzed the specific question of whether a chapter 7 trustee control's a corporate debtor's power to waive attorney-client privilege. It had nothing to do with the meaning of affiliate or voting securities and did not address in any way the issue presently before this Court.

[11] A chapter 7 debtor must file schedules, cooperate with the trustee, and produce records, 11 U.S.C. § 521; must appear and testify at the meeting of creditors, 11 U.S.C. § 343; and is subject to examination under Bankruptcy Rule 2004(d). Compliance with these obligations can have important ramifications for owners, and it is often in their best interest to maintain control of who performs these obligations on behalf of a corporate chapter 7 debtor. As for rights, a chapter 7 debtor may convert a chapter 7 case to a chapter 11 case, 11 U.S.C. §

neither the parties nor the Court have found any authority addressing the issue, presumably it would be up to the owners with voting power to control who performs those obligations and exercises those rights. The point is not to suggest that these rights have any significant value in the D&N or CBSS cases, or in most chapter 7 cases, but nothing in the definition of "affiliate" or "voting securities" requires that voting rights have value, and the rights can continue to exist even after a chapter 7 case is fully administered and closed.[12] Therefore, they can exist in any given chapter 7 case, and it is not correct to say that directors of a chapter 7 debtor, *per se*, have no authority of any kind or that the ability to elect those directors serves no purpose whatsoever.

---

706(a); file proofs of claims on behalf of creditors, Bankruptcy Rule 3004, which may benefit an owner by paying obligations for which the owner is also liable; control property that does not become property of the estate, *see, e.g.,* 11 U.S.C. § 541(b)(1); take control of assets abandoned by a trustee that revert to the debtor, *see, e.g., In re Renaissance Stoneworks, L.L.C.,* 317 B.R. 817, 820 (Bankr. E.D. Mich. 2007) ("There is no authority in the Bankruptcy Code for the abandonment of property of the estate to . . . any party other than the debtor."); and may be able to file motions to require a trustee to abandon property, Bankruptcy Rule 6007(b). Further, as Carter points out, in surplus cases chapter 7 debtors may file objections to claims and assert other rights. *In re Kehoe*, 221 B.R. 285, 288 ("[T]he law is well-settled that Chapter 7 debtors do have standing to appeal orders that directly affect their interests and, in limited circumstances, orders affecting the estate.").

[12] The parties stipulate to the fact that both D&N and CBSS were dissolved according to the records of the Georgia and Florida Secretaries of State as of Carter's petition date, but neither party suggests what relevance this fact has to their positions. The Court's own research reveals that dissolution alone under relevant state law does not end the existence of a corporate entity. *See* O.C.G.A. § 14-2-1405. O.C.G.A. § 14-2-1421(c); Fla. Stat. § 605.0714(5). Further, D&N, a Georgia Corporation, was merely administratively dissolved, and administratively dissolved corporations may be reinstated within five years. O.C.G.A. § 14-2-1422(a). It could be that dissolution of a corporate entity, at some point, terminates an owner's voting securities under relevant state law, but the Court does not believe that administrative dissolution (a common occurrence for small businesses whether operating or not) should be the inflection point. Without the benefit of briefing or argument on the issue, the Court declines to make any decision on the effect of the dissolution of D&N and CBSS in this case.

Fourth, harnessing the definition of "affiliate" as the means to avoid a potentially harsh result in the context of § 1182 could open Pandora's box by affecting other sections of the Bankruptcy Code in which the term "affiliate" is implicated. The term "affiliate" by itself appears in at least 6 sections of the Bankruptcy Code other than §§ 101 and 1182. *See* §§ 362(b)(19), 363(b)(1), 510(b), 524(g)(4), 1125(e), 1129(5), 1145(a). It appears in 5 other defined terms under § 101. *See* §§ 101(12A) (debt relief agency); (22A) (financial participant); (31) (insider); (41) (person); (51D) (Small Business Debtor). It appears in three Bankruptcy Rules. *See* Fed. R. Bankr. P. 1014, 1015, 2019. It also appears in 28 U.S.C. § 1408, which provides for venue for title 11 cases in, among other places, "the district court for the district . . . (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership."

Although the Court appreciates Carter's effort to assuage concerns about how his proposed interpretation would affect other Bankruptcy Code provisions, he analyzes only five Bankruptcy Code provisions containing the term "affiliate" itself. He ignores the venue statute, all Bankruptcy Rules, and all instances of the five defined terms that include the term "affiliate." It is hard to blame him for not engaging in a more fulsome analysis because it would be nearly impossible to do so without going so deep down a rabbit hole that one risks falling into Wonderland.[13] Suffice to say that the Court's concerns are not assuaged. Of particular concern are

---

[13] The Court reaches this conclusion based on its own efforts to reconcile Carter's proposed interpretation with the numerous statutes and rules implicated.

the potential effect on the venue statute and related rules and the definition of "insider," which Carter fails to address at all. These are significant omissions.

"Affiliate is defined primarily for use in the definition of insider. . . and for use in the chapter 11 reorganization cases." H.R. Rep. No. 595, 95th Cong., 1st Sess. 309 (1977). Carter focuses on the second half of that sentence while ignoring the first. The number of Bankruptcy Code provisions containing the term "insider" is at least 16, and several could be directly impacted by a ruling that an owner of a business ceases to be an affiliate of a company once it files a chapter 7 case. *See, e.g.* 11 U.S.C. § 503(c) (heightened scrutiny for certain administrative claims of insiders), § 524(a)(2)(A) and (B) (statements concerning financial condition of insiders), § 547(b)(4)(B) (extended look back period for insider preferences), § 702 (excluding insiders from eligibility to vote on chapter 7 trustee); *see also In re Tidal Constr. Co.,* 446 B.R. 620, 624 (Bankr. S.D. Ga. 2009) (applying heightened scrutiny to transactions with insiders); *In re Alaska Fishing Adventure, LLC*, 594 B.R. 883, 887 (Bankr. D. Alaska 2018) (applying heightened scrutiny to transactions between chapter 7 trustee and insiders). Although the Court could venture deep into the rabbit hole discussing the potential impacts on these sections,[14] the Court is satisfied to stop with a brief discussion of § 727(a), which provides:

---

[14] It *might* be true that the Court's concerns are mitigated relative to *some* provisions by the fact that affiliate or insider status is often measured from a historical perspective, i.e., prior to the chapter 7 case. For example, § 547 applies a longer look back period to transfers to insiders if the creditor was an insider as of the date of the transfer, which would always be pre-petition as between a debtor and its insiders. But relying on this temporal limitation is incomplete because (1) it ignores the post-petition activities of co-owners or co-affiliates of a chapter 7 debtor and how those transactions might be analyzed in subsequent bankruptcy

> The Court shall grant debtor a discharge unless—… the debtor
> has committed any act specified in paragraph (2), (3), (4), (5), or
> (6) of this subsection, on or within one year before the date of the
> filing of the petition, or during the case, in connection with
> another case, under this title or under the Bankruptcy Act,
> concerning an insider.

11 U.S.C. § 727(a)(7). If a business owner ceases to be an affiliate of a debtor in

chapter 7, then that owner might be able to carry out any of the actions prohibited by

§ 727(a)(2) – (6) without the repercussions created in § 727(a)(7), so long as that owner

does not otherwise fall under the definition of an insider. Perhaps there is a way to

read this section and the definition of insider to ensure that Carter's proposed

definition of affiliate never creates an issue in this respect, but the Court declines to

engage in such intellectual gymnastics.

Finally, the Court will address the policy concerns raised by Carter and other

interested parties: excluding an otherwise eligible debtor from Subchapter V because

of an old chapter 7 case. On first blush, the Court shared some concern over this issue,

but having considered it more fully, the Court's concern has lessened. A primary

reason some might view the Court's ruling as unsatisfying is the age of the D&N and

CBSS cases. If the cases were five days old when Carter filed his petition, instead of

five years, the Court doubts its ruling would raise an eyebrow, or that Carter would

even make the argument. What if it were five weeks, or five months? Where should

the line be drawn? Is there a principled way to draw such a line? If there is, the Court

does not believe it is by deeming chapter 7 debtors and their owners not to be affiliates

---

cases of the co-owners; and (2) might require courts to fashion two definitions of affiliate—
one that stops on the petition date and one that does not.

the instant a trustee is appointed, and Carter offers no other method to analyze when affiliation might otherwise terminate during a chapter 7 case.

The Court also is not convinced that owners of chapter 7 debtors with liabilities exceeding the Subchapter V debt limit are the type of small business debtors for whom Subchapter V was designed, or that excluding those owners from Subchapter V while their businesses are liquidated in chapter 7 is inherently unfair, even if the chapter 7 business cases take longer to administer than expected. In the Court's experience, the time it takes to administer a chapter 7 estate generally correlates directly to the size and complexity of the debtor's capital structure, and it is not surprising that larger corporate chapter 7 cases may take years for a trustee to administer. It is also not unreasonable to expect that business owners often will have capital structures, so to speak, that correlate in size and complexity to their business ventures. Business owners often share joint and several liability on many corporate debts, and an owner's bankruptcy case will often have many legal and factual issues that overlap with a business case in chapter 7.[15] The Court is not convinced that the specific facts of this case are likely to be all that common, and even if they occur

---

[15] Carter's counsel indicated at the Subchapter V status conference that Carter filed this bankruptcy case largely because of state court litigation against him by Matthew Armstrong, a co-owner of D&N, and one of the largest creditors of D&N (based on filed proofs of claims). Armstrong's state court litigation, attached to his proof of claim of record in this case, asserts claims against Carter based on, among other things, alleged breaches of fiduciary duty related to a lease by D&N of property owned by a different non-debtor entity also co-owned by Armstrong and Carter. The Court makes no findings relative to Armstrong's claims and points to these issues only to make the point that D&N continues to loom large in Carter's own financial affairs.

17

occasionally, there is nothing inherently unfair about it. Carter is not being locked out of bankruptcy, or even chapter 11, just Subchapter V.

Thus, the Court is not convinced, even from a pure policy perspective, that Carter is right when he argues that the affiliated group of debtors under § 1182 is meant to capture only those debtors that remain under common control during their bankruptcy cases. Even if that were the intent, the statute goes about it in a rather odd way. The plain language of § 1182 provides that the aggregate liabilities of affiliated debtors under title 11 are to be considered when determining Subchapter V eligibility. The Court is not persuaded that chapter 7 debtors were meant to be excluded from that affiliated group through the interpretation of "voting securities" proposed by Carter. The Court finds that Carter owned more than 20% of the voting securities of D&N and CBSS when he filed his chapter 11 case, and together they are a group of affiliated debtors under title 11 for purposes of § 1182.

C.    **The Aggregate Liabilities of Carter and D&N Exceeded $7.5 million on the Petition Date.**

Carter argues that even if he is an affiliate of D&N and CBSS, their aggregate, non-duplicate, non-insider, noncontingent, liquidated liabilities do not exceed $7,500,000. To get there, he contends the Court should consider only the debtors' filed schedules in all three cases when determining the amount of liabilities. The Court rejects this proposition. Although a debtor's schedules provide probative value, the Court will not confine its inquiry solely to the schedules. *In re Hall*, 650 B.R. 595, 600 (Bankr. M.D. Fla. 2023) (citing *In re Steffens*, 343 B.R. 696, 698 (Bankr. M.D. Fla. 2005)). A debtor's eligibility is determined by what the debtors owe on the petition

18

date, not by what the debtors think they owe. *In re Hall,* 650 B.R. at 600 (citing *In re Sullivan*, 245 B.R. 416, 418 (Bankr. N.D. Fla. 1999)).

The filed proofs of claim in D&N exceed $51,767,569.82, and although some of those claims may belong to insiders or are contingent or unliquidated, the IRS filed a proof of claim for more than $28 million. *See* Claim 11-4, D&N case. That claim has been filed of record since 2018,[16] and no objection, withdrawal, or settlement of that claim appears on the record in the D&N case. Carter makes no argument related to the IRS claim against D&N other than his blanket assertion that no proofs of claim should be considered in the D&N case because the trustee in that case has indicated there will be no claims resolution process as the estate is administratively insolvent. Carter offers no authority supporting this contention, and the Court is not convinced it should blindly ignore millions of dollars of filed claims.

Even if the Court were to accept that premise, the same logic does not hold true for Carter's case, and the IRS filed a proof of claim in his case for $4,657,938.64.[17] If the Court considers only the IRS's filed claim in Carter's case and D&N's scheduled

---

[16] The claim was amended several times, with the last amendment filed in November of 2018. Although the original proof of claim was filed in an amount less than $1 million, the first amended claim asserted more than $13 million, the second amended claim asserted more than $11 million, and the final amendment asserts more than $28 million. *See* Claim Nos. 11-1, 11-2, 11-3, and 11-4, D&N case.

[17] The IRS amended its proof of claim three times, and the Court relies on the most recent amendment filed November 17, 2023. The original proof of claim asserted a claim of $4,688,166.79. All three of the amendments exceed $4.6 million in amount.

liabilities that were not scheduled as contingent or unliquidated ($2,966,136),[18] the total still exceeds $7.5 million.

Although Carter scheduled the IRS as a disputed debt in his case in the amount of $2,562,609.23, the plain language of § 1182 does not exclude disputed debts, only contingent and unliquidated debts. *See In re Hall*, 650 B.R. at 598-99. Further, Carter makes no effort to address the IRS's proof of claim in his briefing, has not filed an objection to the proof of claim, and offers no evidence or argument to rebut the presumption of its allowance or prima facie evidence of its validity. *See* 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). The Court will not ignore these considerable debts to the IRS based on nothing more than a bare assertion that only the schedules matter. Carter bears the burden to establish eligibility, and he fails to offer any evidence or persuasive argument that the IRS's filed claims should be ignored in either case.

Thus, if the Court considers only the IRS proof of claim in the D&N case, or alternatively considers only the IRS proof of claim in Carter's case and the scheduled debts in D&N, the total exceeds $7.5 million. This analysis ignores numerous other proofs of claim in D&N for millions of dollars. Therefore, without considering the additional debt of CBSS, the Court concludes that Carter failed to carry his burden of establishing that the combined debt of Carter and his affiliates do not exceed the $7,500,000 debt limit, rendering him ineligible for Subchapter V.

---

[18] The Court calculated this number from its own review of the D&N schedules. Both Carter and the U.S. Trustee asserted a larger number in their papers.

## III.  <u>CONCLUSION</u>

If excluding debtors like Carter from Subchapter V was an unintended consequence of the affiliated-debtors language in § 1182, that is a problem better solved by Congress than this Court tampering with the definition of "affiliate" as proposed by Carter. Accordingly,

IT IS ORDERED that the United States Trustee's objection to Carter's eligibility under Subchapter V (Doc. No. 25) is sustained. Carter is not eligible to proceed under Subchapter V, and his election to do so is revoked. This case will proceed as a traditional chapter 11 case without reference to the Subchapter V provisions going forward.

The Clerk is directed to serve a copy of this Order on the Debtor, his counsel of record, the United States Trustee, and all parties on the mailing matrix.

END DOCUMENT